821 So.2d 1183 (2002)
STOMAR, INC., Appellant,
v.
LUCKY SEVEN RIVERBOAT COMPANY, L.L.C., an Alabama limited liability company; Matthew Walker; William B. Taylor, III; Thomas Bender and Joseph A. Ollinger, Appellees.
No. 4D01-1713.
District Court of Appeal of Florida, Fourth District.
July 24, 2002.
*1185 James W. Stoup of James W. Stoup, P.A., Fort Lauderdale, for appellant.
A. Clay Rankin, III and Jaime W. Betbeze of Hand Arendall, LLC, Mobile, Alabama and Alexander F. Vitale of Holland and Knight, LLP, Fort Lauderdale, for appellees.
FARMER, J.
In this case we consider an appeal dismissing a Florida ship broker's suit against the nonresident seller of a vessel and certain individual defendants associated with the business entity owning the vessel. For now, we reverse only the trial court's dismissal of the business entity and remand the case to the trial court to reconsider its decision as to the individual defendants in light of intervening authority.
We begin by noting that a trial court's ruling on a motion to dismiss based on a question of law is subject to de novo review. Execu-Tech Bus. Sys., Inc. v. New Oji Paper Co., 752 So.2d 582, 584 (Fla.2000). In Venetian Salami Co. v. Parthenais, 554 So.2d 499 (Fla.1989), the court used a dual inquiry for determining whether long arm personal jurisdiction exists. The trial court must first decide whether the complaint alleges sufficient jurisdictional facts to bring the action within Florida's long arm jurisdiction statute.[1] Second, the court must determine whether the non-resident lacks sufficient contacts with Florida such that the maintenance of the suit here would offend traditional notions of fair play and substantial justice because defendant could not reasonably anticipate being sued in Florida. 554 So.2d at 500; accord Execu-Tech, 752 So.2d at 584; World Class Yachts, Inc. v. Murphy, 731 So.2d 798, 799 (Fla. 4th DCA 1999); see also World Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 287, 100 S.Ct. 559 (1980). Plaintiffs amended complaint satisfies both prongs of the Venetian Salami inquiry with regard to Lucky Seven.
First, the allegations are sufficient to bring Lucky Seven within the ambit of Florida's long-arm statute.[2]See § 48.193(1)(g), Fla. Stat. (2000). Plaintiff alleged that Lucky Seven breached the parties' brokerage agreement by failing to pay the commission owed to plaintiff in Florida. See Poe v. Marine Group of Palm Beach, Inc., 760 So.2d 273, 274 (Fla. 4th DCA 2000); Tallmadge v. Mortgage Fin. Group, Inc., 625 So.2d 1313, 1313 (Fla. 4th DCA 1993).
The record of the evidentiary hearing with conflicting facts resolved in favor of the trial court's decision also shows facts sufficient to meet the provisions of section 48.193(1)(g) to establish jurisdiction over Lucky Seven. The contract, a brokerage agreement, in effect required payment in Florida. Thus the record sufficiently indicates *1186 that Lucky Seven is accused of breaching a contract in this state by failing to make payment here and thereby subjected itself to the jurisdiction of Florida courts. Poe, 760 So.2d at 274; Tallmadge, 625 So.2d at 1313; see also Venetian Salami, 554 So.2d at 503 (foreign corporation who hired Florida collection agency to assist in collecting delinquent accounts but failed to pay agreed upon fee subject to Florida long arm jurisdiction).
The constitutional prong of the Venetian Salami standard is also satisfied with regard to Lucky Seven, for the record contains evidence of sufficient minimum contacts between Florida and Lucky Seven to satisfy due process concerns. "Factors that go into determining whether sufficient minimum contacts exist include the foreseeability that the defendant's conduct will result in suit in the forum state and the defendant's purposeful availment of the forum's privileges and protections." Taskey v. Burtis, 785 So.2d 557, 559 (Fla. 4th DCA 2001). There is no question from the evidence that Lucky Seven availed itself of the privilege of conducting business activities in Florida through plaintiff. As we stated in Tallmadge:
"It is reasonable to conclude that a party hiring an agent under these circumstances [a brokerage agreement] would expect to be haled into court in this state on a breach of contract claim for nonpayment [of the brokerage commission]... [R]etaining a Florida agent to perform services in this state is sufficient to meet due process concerns in an action for nonpayment for the services performed there."
625 So.2d at 1314. See, e.g., Offer v. Arison, 671 So.2d 193 (Fla. 4th DCA 1996) (holding that plaintiff showed sufficient facts to constitute minimum contacts with forum to satisfy due process where Georgia resident sought Florida yacht broker's assistance in buying yacht but then bought boat with aid of other Florida residents thereby excluding the plaintiff from a substantial commission fee).
Lucky Seven argues that its contacts with Florida are insufficient because the mere execution of a contract with a Florida resident and failure to make payment in Florida are not constitutionally sufficient. See Venetian Salami, 554 So.2d at 501, 503 (explaining that a nonresident's contract with a Florida resident alone, or the mere failure to pay money in Florida, cannot automatically establish sufficient minimum contacts to warrant the exercise of long arm jurisdiction). In this case, however, there was more than a mere failure to make payment in Florida. Actually the brokerage contract effectually required plaintiff to render substantial services in Florida on behalf of the nonresident owner in the marketing and negotiation of the sale of the vessel which was the object of the brokerage agreement. As the Venetian Salami court noted:
"The Court long ago rejected the notion that personal jurisdiction might turn on `mechanical' tests or on `conceptualistic... theories of the place of contracting or of performance.' Instead, we have emphasized the need for a `highly realistic' approach that recognizes that a `contract' is `ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction.' It is these factsprior negotiations and contemplated future consequences, along with terms of the contract and the parties' actual course of dealingthat must be evaluated in determining wether the defendant purposefully established minimum contacts within the forum."
554 So.2d at 501 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 105 S.Ct. *1187 2174, 85 L.Ed.2d 528 (1985)). Lucky Seven had sufficient contacts with this state, including more than a mere obligation to make payment in Florida. Lucky Seven hired plaintiff to perform brokerage services on its behalf in Florida, including negotiations, for the purpose of selling Lucky Seven's vessel here. The circuit court properly had jurisdiction over Lucky Seven and erred in dismissing the case on that basis.
We now turn to the dismissal of the individual defendants. The "corporate shield" doctrine draws a "distinction between a corporate officer acting on one's own and a corporate officer acting on behalf of one's corporation." Doe v. Thompson, 620 So.2d 1004, 1006 (Fla.1993); Snibbe v. Napoleonic Soc. of Am., Inc., 682 So.2d 568, 569 (Fla. 2d DCA 1996). Because the individual defendants were acting in their representative capacity on behalf of the limited liability company in executing the brokerage agreement, the circuit court correctly determined that it could not have personal jurisdiction over them under section 48.193(1)(g). See GeoStar v. Weinstein, 755 So.2d 739 (Fla. 4th DCA 2000) (finding no jurisdiction over corporation's president who was not party to contract allegedly breached).
There still remains plaintiffs claim against the individual defendants for fraudulent inducement of the contract as a basis for jurisdiction, however. To lay jurisdiction under the "tortious activity" provision of section 48.193(1)(b) over the individual defendants, we agree that it is not necessary that the individual defendants actually commit physical acts within the state of Florida to be subject to jurisdiction. See Execu-Tech, 752 So.2d at 584. It is also true, however, as our supreme court has just held, that "`committing a tortious act' in Florida under section 48.193(1)(b) can occur through the nonresident defendant's telephonic, electronic, or written communications into Florida." Wendt v. Horowitz, 822 So.2d 1252, 1260 (Fla.2002).
Neither the trial court nor the parties had the benefit of the Wendt decision, which was released after the appeal in this case was taken to this court and after we held oral argument. Because the jurisdictional issue under Wendt involves both factual and legal questions, it is necessary that we remand the case to the trial court for a reconsideration of this issue in light of Wendt. The court is authorized to take additional evidence in this regard if it be so advised.
At this time, we therefore reverse only the order dismissing Lucky Seven.
WARNER, J., and ROBY, WILLIAM L., Associate Judge, concur.
NOTES
[1] § 48.193(1), Fla. Stat. (2001) non-residents subject to jurisdiction of Florida courts for "(a) operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state; (b) committing a tortious act within this state; ... (g) breaching a contract in this state by failing to perform acts required by the contract to be performed in this state."
[2] In the amended complaint, plaintiff asserted long arm jurisdiction based on the commission of a tort in Florida and engaging in business in Florida. Although the pleading did not in so many words allege jurisdiction under the provision addressing the breach of an agreement requiring performance in Florida, it did sufficiently allege specific facts demonstrating that the Lucky Seven's actions fit within that provision. Wash. Capital Corp. v. Milandco, Ltd., Inc., 695 So.2d 838, 841 (Fla. 4th DCA 1997).