**Robert HINKLE et al.,[1] Plaintiffs,**

**v.**

1. This case was consolidated with the related case *Skinner et al. v. Continental Motors, Inc. et al.*, Case No:8:16-cv-3223-CEH-AAS. *See* Doc. 44.

CONTINENTAL MOTORS, INC., Continental Motors Services, Inc., Cirrus Design Corporation, Cirrus Industries, Inc. and Kavlico Corp., Defendants.

Case No: 8:16–cv–2966–T–36MAP

United States District Court, M.D. Florida, Tampa Division.

Signed 07/21/2017

Edward M. Mullins, Ana M. Barton, REED SMITH LLP, Miami, FL, for Defendant Cirrus Design Corporation, Cirrus Aircraft Corporation and Ballistic Recovery Systems, Inc.

John M. Murray, Esq., Andrew M. Brown, Esq., Murray, Morin & Herman, P.A., Tampa, FL, for Defendant Lending Edge Aviation Services, Inc.

Mark H. Perenich, Perenich, Caulfield, Avril & Noyes, PA, Clearwater, FL, Michael S. Miska, Pro Hac Vice, The Wolk Law Firm, Philadelphia, PA, David I. Katzman, Katzman, Lambert & McClune, Troy, MI, for Plaintiffs.

Juan R. Serrano, Griffin & Serrano, PA, Ft Lauderdale, FL, Peter Joseph Lewis, Richards Goldstein LLP, Coral Gables, FL, for Defendants.

## ORDER

Charlene Edwards Honeywell, United States District Judge

This matter comes before the Court upon Defendants Cirrus Design Corporation and Cirrus Industries, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction [against the Hinkles] (Doc. 66), the Hinkles' response (Doc. 74), Cirrus Design Corporation and Cirrus Industries, Inc.'s reply (Doc. 87), Defendant Kavlico Corporation's Motion to Dismiss Plaintiffs' Complaint [against the Hinkles] (Doc. 78), the Hinkles' response (Doc. 86)[2] and Kavlico Corporation's reply (Doc. 92). Also before the Court are Defendants Cirrus Design Corporation and Cirrus Industries, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction [against the Skinners] (Doc. 27), the Skinners' response (Doc. 36)[3], and Defendant Kavlico Corporation's Motion to Dismiss Plaintiffs' Complaint [against the Skinners] (Doc. 38).

This case concerns an aircraft purchased from a Minnesota corporation, sold by a Virginia salesperson, delivered in Minnesota, which crashed in South Carolina. The Court must decide whether the Florida long-arm statute and the Due Process Clause of the Fourteenth Amendment permit it to exercise jurisdiction over the Defendants given the absence of any Florida connection to the accident and the related causes of action. Plaintiffs invoke both specific and general personal jurisdiction. They urge the Court to find that because the plaintiff, who purchased the aircraft, is a Florida resident and the Defendants engage in activities in Florida, this Court has personal jurisdiction over the Defendants.

In their motions, Defendants argue that this Court should dismiss them from the case because the Plaintiffs do not establish personal jurisdiction under the Florida long-arm statute, or the due process requirements, particularly in light of recent case law from the United States Supreme Court. In *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County*, —— U.S. ——, 137 S.Ct. 1773, 198 L.Ed.2d 395 (2017), the Supreme Court recently clarified the standard for general and specific jurisdiction. It reiterated that for general jurisdiction, the paradigm forum for a corporation is an equivalent place where the corporation is fairly regarded as "at home;" and for specific jurisdiction the suit must arise out of or relate to the defendant's contacts with the forum. Neither standard is met in this case. The Court, having considered the motions and being fully advised in the premises, will grant both motions.

## I. STATEMENT OF FACTS [4]

### a. Factual Background

On November 28, 2014, Plaintiffs Robert Hinkle, Brenda Hinkle, Dawn Skinner and Michael Skinner departed from Sarasota/Bradenton International Airport in a Cirrus S22T aircraft, bearing registration number N227RR (the "Aircraft"). Skinner Compl. at ¶¶ 17, 18; Doc. 20 at ¶¶ 17, 18. The Aircraft crashed in South Carolina. Skinner Compl. at ¶¶ 23, 36; Doc. 20 at ¶¶ 23, 36. Mr. Hinkle, the pilot, was unable to restore power to the Aircraft, and the

---

2. This pleading responds to both Doc. 78 and Doc. 38.

3. Documents 27 and 36 appear on the *Skinner* docket.

4. The following statement of facts is derived from the Skinners' Complaint ("Skinner Compl.") (Doc. 1, Case No. 16–cv–3223), and the Hinkles' Amended Complaint (Doc. 20) the allegations of which the Court must accept as true in ruling on the instant Motion to Dismiss. *Linder v. Portocarrero*, 963 F.2d 332, 334 (11th Cir. 1992); *Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp. S.A.*, 711 F.2d 989, 994 (11th Cir. 1983).

engine failure required a forced landing, causing injuries to everyone on board. Skinner Compl. at ¶ 36; Doc. 20 at ¶ 36. The post-accident testing showed the oil transducer was faulty and the engine did not produce the required power to function properly. Skinner Compl. at ¶¶ 38–40; Doc. 20 at ¶¶ 38–40. Plaintiffs filed suit against the Defendants Cirrus Design Corporation and Cirrus Designs, Inc. (collectively "Cirrus") and Kavlico Corporation, Inc. ("Kavlico") (collectively the "Defendants"), among other parties. Plaintiffs allege generally that Kavlico manufactured a defective sensor in the Aircraft which contributed to the loss of engine power; Skinner Compl. at ¶¶ 49–51; Doc. 20 at ¶¶ 49–51; and Cirrus manufactured a defective Aircraft and misrepresented its airworthiness. Skinner Compl. at ¶¶ 42–48; Doc. 20 at ¶¶ 42–48.

### b. Jurisdictional Allegations

Plaintiffs allege that this Court has in personam jurisdiction over Cirrus and Kavlico because they do the following in Florida: conduct business within the state of Florida, avail themselves to business opportunities, advertise the availability of parts and information, ship parts and literature, and receive money from businesses which order goods, services, and parts from them. And they supply literature to aircraft owners, mechanics, fixed base operators, and others who perform aircraft maintenance located within the state. Skinner Compl. at ¶ 12; Doc. 20 at ¶ 12. Plaintiffs also allege that Cirrus and Kavlico provide information and knowledge regarding aircraft parts that entities can purchase for repair and replacement of the aircrafts and their components. *Id.* They further allege that Cirrus and Kavlico rou-

tinely sell their products to Florida and the Aircraft was sold to Mr. Hinkle, who was in Florida when he placed his order.[5] Skinner Compl. at ¶¶ 13–14; Doc. 20 at ¶¶ 13–14. Plaintiffs also allege that "[a]ll defendants maintain systematic and continuous contacts with Florida and/or have registered agents here[,] [and] [j]urisdiction is proper under the Florida long-arm statute and the Due Process Clause of the United States Constitution." Skinner Compl. at ¶ 15; Doc. 20 at ¶ 15.

## II. LEGAL STANDARD

■ Motions to dismiss for lack of personal jurisdiction are governed by Federal Rule of Civil Procedure 12(b)(2). A court must dismiss an action against a defendant over which it lacks personal jurisdiction. *Smith v. Trans–Siberian Orchestra*, 689 F.Supp.2d 1310, 1312 (M.D. Fla. 2010) (citing *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1214 n. 6 (11th Cir. 1999)). To withstand a motion to dismiss, a plaintiff must plead sufficient facts to establish a prima facie case of jurisdiction over the non-resident defendant. *See id.* at 1313; *Virgin Health Corp. v. Virgin Enters. Ltd.*, 393 Fed.Appx. 623, 625 (11th Cir. 2010). The district court must accept the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits. *Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291 (11th Cir. 2000). If the defendant is able to refute personal jurisdiction by sustaining its burden of challenging the plaintiff's allegations through affidavits or other competent evidence, the plaintiff must substantiate its jurisdictional allegations through affidavits, testimony, or other evidence of its own. *Future Tech. Today, Inc. v. OSF*

---

**5.** Cirrus attached a copy of the invoice to its motions to dismiss which states that the Aircraft was ordered by Mr. Hinkle but ultimately sold to Header Bug, LLC, a company owned by Mr. Hinkle. The invoice shows the pick-up location in Minnesota. *See* Docs. 66–4; 24–4.

*Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000).

██ The district court must construe all reasonable inferences in the light most favorable to the plaintiff when dealing with conflicting evidence. *PVC Windoors, Inc. v. Babbitbay Beach Const., N.V.*, 598 F.3d 802, 810 (11th Cir. 2010); *Consol. Dev. Corp.*, 216 F.3d at 1291. To determine whether personal jurisdiction exists over an out-of-state defendant, courts undertake a two-step analysis. *Verizon Trademark Servs. v. Producers, Inc.*, 810 F.Supp.2d 1321, 1324 (M.D. Fla. 2011).

██ First, the court must determine whether the plaintiff has alleged sufficient facts to subject the defendant to the forum state's long-arm statute. *See Future Tech. Today*, 218 F.3d at 1249. Second, if the court determines that the forum state's long-arm statute has been satisfied, the court must then decide whether the exercise of jurisdiction comports with the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Id.* In determining whether jurisdiction comports with the Due Process Clause, the court must ask "(1) whether [the] defendant has established sufficient 'minimum contacts' with the [forum state]; and (2) whether the exercise of this jurisdiction over [the] defendant would offend 'traditional notions of fair play and substantial justice.'" *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)).

## III. DISCUSSION

### a. Defendants' Motion to Dismiss

Kavlico and Cirrus move to dismiss all the claims against them on the grounds that this Court lacks personal jurisdiction over them.

Specifically, Kavlico argues that it is not subject to personal jurisdiction in Florida because it is not essentially "at home" in this state under the due process analysis. It is incorporated and maintains its principal place of business in California, and does not maintain any manufacturing or design facilities, offices, sales representatives, mailing addresses or bank accounts in Florida. Based on the foregoing, it argues that no specific or general jurisdiction exists. Further, to the extent that Kavlico engages in limited business activities here, it argues that the claims in this case do not arise from any of the business activity it conducts in Florida. It is undisputed that the accident did not occur in Florida, the oil pressure transducer (alleged to be defective) was manufactured in Mexico, and sold from Kavlico to Cirrus in California and delivered in Minnesota. And the Aircraft crashed in South Carolina. Under these circumstances, Kavlico argues, it would be improper to confer personal jurisdiction over it under the Florida long-arm statute and it would violate the traditional notions of fair play and substantial justice.

Plaintiffs assert that Mr. Hinkle, a Florida resident, purchased the Aircraft brand new "from Florida" and registered it to Header Bug LLC, a Florida entity. Doc. 74, Ex. A. And, they argue, the sale of the Aircraft included a "tail to spinner" warranty for five years which would require service and maintenance in Florida. *Id.* Additionally, Plaintiffs argue that Kavlico has an overwhelming presence in Florida, took affirmative steps to conduct business here, maintains an active registration with the Florida Department of State and a registered agent, and causes "huge amounts" of Kavlico products to be sent into Florida. Doc. 86 at 11. Plaintiffs also assert that Kavlico maintains only two corporate listings, one in California and one in Florida and is listed as "in existence" in Texas. Based on those listings, Plaintiffs

argue that Kavlico has targeted Florida as a place it conducts enough business to require registration here. They argue it is therefore "essentially at home" in Florida. *Id.* at 12. Kavlico also has three different agents engaged in sales on its behalf, a distributor, South Atlantic Components Sales, and two "distribution partners", Allied Electronics and Heilind Electronics. Doc. 86 at 12, Exs. D, F, G. Plaintiffs argue that the causes of action "arise from" Kavlico's activities here because Kavlico's product was in the Aircraft which was sold to its ultimate consumer in Florida, and it maintains substantial contacts here.[6]

The Cirrus Defendants argue that as a Minnesota-based airplane manufacturer, it designed, manufactured, assembled, tested, sold and delivered the Aircraft in Minnesota. Therefore, it argues, the Court lacks a statutory and a constitutional basis for permitting Plaintiffs to sue out-of-state defendants regarding an out-of-state accident involving an Aircraft completely sold out-of-state. It too argues that: 1) it is not "at home" in Florida as required by the Due Process Clause and 2) it is not subject to specific personal jurisdiction under the Florida long-arm statute because the claims do not "arise from" any business activity it conducts in Florida. It argues that essentially the Cirrus Defendants do not have contacts with Florida sufficient to justify personal jurisdiction.

Plaintiffs respond that Cirrus maintains an active registration with the Florida Department of State, has a registered agent here, has a massive volume of aircraft in Florida with at least 428 Cirrus aircrafts registered here (9% of the national total). Doc. 74 at 3. Plaintiffs also assert that

Cirrus maintains a sales representative here in Florida, has a service training network in Florida, and has employees here. And Cirrus has engaged in litigation both as a plaintiff and defendant submitting itself before the courts of Florida. Plaintiffs contend that these facts demonstrate an ongoing business presence in Florida which satisfies the Florida long-arm statute and the Due Process Clause.

### i. Defendants' Affidavits in Support of the Motions

Kavlico submits the Declaration of Mark Urban ("Urban Dec.") in support of its motion. Doc. 38-3 (Ex. C); Doc. 78-3 (Ex. C). Based on the information in the Urban Declaration, Kavlico establishes the following. It is a corporation organized under the laws of California with its principal place of business in California. *Id.* at ¶¶ 2, 3. It has not consented to jurisdiction in Florida in this case. *Id.* at ¶ 4. It is registered to do business in Florida as a foreign corporation. *Id.* at ¶ 5. But it does not maintain any manufacturing or design facilities, offices, sales representatives, mailing addresses, or bank accounts in Florida. *Id.* at ¶ 6. It does maintain a website and advertises nationally, but it does not specifically direct its advertising toward Florida-specific publications. *Id.* at ¶ 7. Kavlico uses a third-party sales representative, South Atlantic Component Sales, for all sales in Florida. It is a separate and distinct entity that sells components for multiple manufacturers. *Id.* at ¶ 8. Kavlico manufactured, assembled, and tested the component in Mexico through an affiliate. *Id.* at ¶ 10. It then sold the component from California to Cirrus in Minnesota; it did not perform any actions in Florida relating to the Aircraft or any of the Aircraft's components.

---

**6.** Plaintiffs also argue that Kavlico's parent company, Sensata Technologies, has a presence in Florida; and its potential customers, i.e. light aircraft manufacturers and the space program, have a strong presence in Florida, which further demonstrates Kavlico's ongoing business activities in Florida. Doc. 86 at 13.

*Id.* at ¶¶ 10–15. To the extent provided, Kavlico prepared and disseminated instructions related to the Aircraft or its components in either Mexico or California. *Id.* at ¶ 14.

Cirrus submits the Affidavit of its Executive Vice President and Chief Financial Officer Donald McIsaac ("McIsaac Aff.") in support of its motion. Doc. 66–4 (Ex. D); Doc. 27–4 (Ex. D). Based on the information in the McIsaac Affidavit, Cirrus establishes that it is a corporation organized under the laws of Wisconsin with its principal place of business in Duluth, Minnesota. *Id.* at ¶¶ 4, 5. It does not consent to jurisdiction in Florida. *Id.* at ¶ 6. It does not maintain any bank accounts in Florida. *Id.* at ¶ 7. And although it advertises its products nationwide and maintains a website, it does not specifically direct its advertising toward Florida-specific publications. *Id.* at ¶ 8. Cirrus designed, manufactured, assembled, tested, and sold all SR22 model aircraft, including the one at issue here, in Minnesota. *Id.* at ¶¶ 9–11. The Aircraft was assembled, tested and certified as airworthy by the FAA in Minnesota on September 26, 2014. *Id.* at ¶¶ 11, 12. Mr. Hinkle did not use a sales representative in Florida in his transaction. Mr. Hinkle purchased the Aircraft through a Virginia sales representative, *id.* at ¶¶ 13, 15; purchased it from Minnesota through his company, *id.* at ¶ 14; and took ownership and possession of it in Minnesota. *Id.* at ¶ 16. Cirrus never performed any maintenance on the Aircraft in Florida and did not ship any maintenance or replacement parts for the Aircraft to Florida. *Id.* at ¶¶ 21, 22. The McIsaac Affidavit also contains the Airworthiness Certificate (Ex. 1) establishing that the Aircraft was deemed airworthy on September 26, 2014; the Cirrus Aircraft Order Form (Ex. 2) establishing that Mr. Hinkle ordered the Aircraft on June 4, 2014, with delivery scheduled to take place in Minnesota; and the Aircraft Bill of Sale (Ex. 3) establishing that Cirrus sold the Aircraft to Header Bug LLC.

Plaintiffs offer no affidavits in opposition. They instead attach exhibits to their responses which consist of invoices for the Aircraft purchase, corporate filing records for Cirrus and Kavlico, printouts from various websites including Defendants and their affiliates, and docket records for Florida cases involving Cirrus. *See* Docs. 36–1–36–17; 74–1–74–17; 86–1–86–4. Cirrus and Kavlico make no objections to Plaintiffs' proffer of evidence in support of their jurisdictional arguments.

### ii. The Florida long-arm statute

The Court begins by analyzing whether Florida's long-arm statute has been satisfied. Florida's long-arm statute permits jurisdiction over non-residents under two circumstances. First, a non-resident submits itself to Florida's specific jurisdiction by performing any of the acts enumerated by the long-arm statute. Fla. Stat. §§ 48.193(1)(a)(1)–(9). Second, a non-resident submits itself to Florida's general jurisdiction by "engag[ing] in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise ... whether or not the [plaintiff's] claim arises from that activity." Fla. Stat. § 48.193(2). Here, Plaintiffs have not established that the Court has either specific or general jurisdiction over Kavlico or Cirrus.

### iii. Specific jurisdiction

■ In analyzing the issue of specific jurisdiction, a court must first determine whether one of the acts set out in section 48.193(1) of the Florida long-arm statute is applicable to the case at hand. In the event that this first prong of specific jurisdiction is met, a court must then address the due process prong. The Eleventh Circuit has comprehensively discussed this standard.

And the United States Supreme Court, in a handful of leading cases, laid out the proper due process standard for cases involving specific jurisdiction. In the interest of preserving "traditional notions of fair play and substantial justice" a state may exercise specific jurisdiction only over a defendant who has certain "minimum contacts" with the state. *Int'l Shoe Co.*, 326 U.S. at 316, 66 S.Ct. 154. This so-called "minimum contacts" rule is the "constitutional touchstone" for such jurisdiction. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

The Supreme Court reiterated the importance of the "affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State" in the context of specific jurisdiction. *Bristol–Myers Squibb Co. v. Superior Court of California, San Francisco County*, —— U.S. ——, 137 S.Ct. 1773, 1780, 198 L.Ed.2d 395 (2017) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919, 131 S.Ct. 2846, 180 L.Ed.2d 796 (2011)). In *Bristol–Myers Squibb Co.*, the Supreme Court considered a pharmaceutical product liability claim brought by several plaintiffs, most of whom were not residents of the forum state. *Id.* at 1778. In that case, the defendant engaged in activity within the forum state, but it was neither incorporated nor headquartered there and did not develop, market, manufacture, label, package or do any other substantial activity on the product in the forum. *Id.* at 1779. And plaintiffs did not allege that they obtained the product from an in-forum source, or were injured or treated in the forum state. *Id.* Under those facts, the Supreme Court held that the California courts lacked specific personal jurisdiction over the defendant. *Id.* at 1783.

Plaintiffs allege that Kavlico and Cirrus have submitted themselves to Florida's specific jurisdiction in four ways, by: (1) operating, engaging in, or carrying on a business venture in Florida, (2) committing a tortious act in Florida, (3) causing injury to persons or property by conducting certain solicitation or service activities within Florida, and (4) breaching a contract by failing to perform acts required to be performed in Florida.

■ Cirrus and Kavlico correctly note that Plaintiffs' injuries did not occur in Florida. Notwithstanding the allegations that Cirrus and Kavlico committed tortious acts by allegedly making false representations regarding the airworthiness of the Aircraft and its components, or breached their contracts, Plaintiffs did not incur their injuries until the Aircraft crashed in South Carolina. Because that crash occurred in South Carolina and not Florida, Defendants argue, the injuries did not "arise from" any of the alleged acts as contemplated by the long-arm statute.

■ Regardless of the enumerated act by which a plaintiff asserts specific jurisdiction, the complaint must allege a cause of action "arising from" that enumerated act in Florida. Fla. Stat. § 48.193(1)(a). It is well-established that the phrase "arising from" requires that the place of injury be within Florida. *Hollingsworth v. Iwerks Entm't, Inc.*, 947 F.Supp. 473, 478 (M.D. Fla. 1996); *Allerton v. State Dep't of Ins.*, 635 So.2d 36, 39–40 (Fla. 1st DCA 1994). *Clay v. AIG Aerospace Ins. Services, Inc.*, 61 F.Supp.3d 1255, 1267–70 (M.D. Fla. 2014) ("It is a well-established principle that the phrase 'arising from' requires that the place of injury be within Florida"). In *Daimler AG v. Bauman*, the Supreme Court reiterated that "specific jurisdiction . . . can [only] be asserted where a corporation's in-state activities are not only 'continuous and systematic', but also give rise

to the liabilities sued on." —— U.S. ——, 134 S.Ct. 746, 761, 187 L.Ed.2d 624 (2014). As set forth in the amended complaint, Plaintiffs' causes of action do not "arise from" an act in Florida as contemplated by the long-arm statute.

Even if the Court concluded that the injuries occurred in Florida, the Plaintiffs do not meet their burden to demonstrate a nexus between the alleged commission of a tortious act, injury to plaintiffs or alleged breach of contract and the Defendants' business activity in Florida.

### 1. Conducting business

■■■■■ "In order to establish that a defendant is 'carrying on business' for the purposes of the long-arm statute, the activities of the defendant must be considered collectively and show a general course of business activity in the state for pecuniary benefit." *Future Tech. Today, Inc.*, 218 F.3d at 1249. Factors relevant, but not dispositive, to this analysis include the presence and operation of an office in Florida, *see Milberg Factors, Inc. v. Greenbaum*, 585 So.2d 1089, 1091 (Fla. 3d DCA 1991); the possession and maintenance of a license to do business in Florida, *see Hobbs v. Don Mealey Chevrolet, Inc.*, 642 So.2d 1149, 1153 (Fla. 5th DCA 1994); the number of Florida clients served, *see Milberg Factors, Inc.*, 585 So.2d at 1091; and the percentage of overall revenue gleaned from Florida clients, *see id.*; *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 628 (11th Cir. 1996). Additionally, there must be a nexus between the alleged causes of action and Cirrus and Kavlico's alleged business activities. *See Bloom v. A.H. Pond Co., Inc.*, 519 F.Supp. 1162, 1168 (S.D. Fla. 1981) ("It is clear that doing business in this state is not a sufficient basis, standing alone, upon which to predicate long-arm jurisdiction. There must also be some nexus or connection between the business that is conducted in Florida and the cause of action alleged.").

■■■ Although Cirrus and Kavlico conduct business in Florida, there is no nexus between the business conducted and the alleged causes of action at issue sufficient to confer jurisdiction. Kavlico did all work related to the oil pressure transducers in Mexico and California, and the product was shipped to Minnesota. Although it is registered to do business here and does conduct business in Florida, as detailed by Plaintiffs' response, the record does not demonstrate that any of its business activities are connected to the causes of action alleged in this case. Cirrus also has connections with Florida, as it is registered to do business here, has sales representatives, and does training and maintenance here and provides a "tail to spinner" warranty that potentially can be used here. But none of those acts are connected to the alleged causes of action since Mr. Hinkle did not avail himself of any of the services here in Florida.

Plaintiffs make much of the fact that Mr. Hinkle, a Florida resident, purchased the Aircraft from Cirrus in the name of his Florida company Header Bug, LLC. But this connection is insufficient to confer jurisdiction. *Accord Tarasewicz v. Royal Caribbean Cruises, Ltd.*, No. 14-CIV-60885, 2015 WL 3970546 (S.D. Fla. June 30, 2015) (citing *Walack v. Worldwide Mach. Sales, Inc.*, 278 F.Supp.2d 1358, 1366 (M.D. Fla. 2003)) (holding that the fact that a foreign defendant contracts with a Florida resident is not enough to establish personal jurisdiction over the foreign defendant). Plaintiffs cite *Dodgen Industries, Inc. v. Cook*, 455 So.2d 466 (Fla. 1st DCA 1984) for the proposition that if a product is destined for Florida, its place of sale is irrelevant. Doc. 86 at 17. But *Dodgen* is distinguishable, because in that case the defendant solicited the plaintiff

through personal mail in Florida. *Id.* at 467. And although the sale was made F.O.B. Iowa, the manufacturer delivered in Florida and otherwise provided reports and contacted the plaintiff in Florida to try to resolve outstanding issues. *Id.*

Plaintiffs' allegations and competent evidence do not demonstrate that the Court has specific personal jurisdiction over Kavlico and Cirrus on the basis of conducting business activity in Florida. *Accord Brown v. Carnival Corp.*, 202 F.Supp.3d 1332, 1346 (S.D. Fla. 2016) (dismissing defendant where plaintiff did not provide a nexus between the alleged tort and the defendant's business activities); *Schulman v. Glob. Citizens Travel, LLC*, No. 13-CV-23766, 2015 WL 11018438 (S.D. Fla. Jan. 18, 2015) (same).

### 2. Committing a tortious act

The Florida long–arm statute also provides for the assertion of jurisdiction over an out-of-state defendant who commits a tortious act in Florida. Fla. Stat. § 48.193(1)(a)(2). Florida courts construing this provision have noted that the alleged tortfeasor's "physical presence [in Florida] is not required." *Wendt v. Horowitz*, 822 So.2d 1252, 1260 (Fla. 2002). Rather, jurisdiction may be found in certain instances where an out-of-state defendant commits a tort that produces an injury in Florida. *See id.* For example, allegations about an out-of-state defendant's "telephonic, electronic, or written communications into Florida" are sufficient to trigger jurisdiction under the long–arm statute provided, however, that the cause of action arises from those communications. *Id.* There must be some "connexity" that exists between the out-of-state communications and the cause of action such that the cause of action "would depend upon proof of either the existence or the content of any of the communications . . . into Florida." *Carlyle v. Palm Beach Polo Holdings, Inc.*, 842 So.2d 1013, 1016 (Fla. 4th DCA 2003).

And "the state's long-arm statute can support personal jurisdiction over any alleged conspirator where any other co-conspirator commits an act in Florida in furtherance of the conspiracy, even if the defendant over whom personal jurisdiction is sought individually committed no act in, or had no relevant contact with, Florida." *United Techs. v. Mazer*, 556 F.3d 1260, 1281–82 (11th Cir. 2009).

Plaintiffs argue that the location of the crash site is "merely fortuitous" because Kavlico and Cirrus' physical presence in Florida is unnecessary to confer jurisdiction. Doc. 36 at 21; Doc. 86 at 18. And, they argue, because the Hinkles reside, and the Skinners own property, in Florida the allegations satisfy the requirements under this subsection because tortious acts were committed against them. The Court is unpersuaded by these arguments. Significantly, there are no allegations or arguments regarding Cirrus and Kavlico's communications into Florida related to the causes of action or that they engaged in a conspiracy with an entity that committed acts in Florida.

It is undisputed that the alleged tort caused injury in South Carolina, the site of the crash, not Florida. And the Aircraft was sold from and delivered in Minnesota. And any alleged tortious act, based on the allegations in the Complaint and Amended Complaint, occurred outside of Florida. Plaintiffs' reliance on *Wendt* for the proposition that "the commission of torts out of state that cause an injury to an in-state resident satisfies Florida's long-arm statute" is misplaced. 822 So.2d at 1258. That proposition contemplates a connection between the tortious act and the state, which is not the case here. The Court concludes that the Plaintiffs' allegations and compe-

tent evidence do not demonstrate that either Kavlico or Cirrus "committed a tortious act" in Florida to confer personal jurisdiction.

### 3. Breach of contract

■ The Florida long-arm statute confers specific jurisdiction over a non-resident defendant who breaches "a contract in this state by failing to perform acts required by the contract to be performed in this state." Fla. Stat. § 48.193(1); *Advanced Bodycare Sols. LLC v. Thione Intern., Inc.*, 514 F.Supp.2d 1326, 1326 (S.D. Fla. 2007), *aff'd*, 524 F.3d 1235 (11th Cir. 2008). And where the contract requires a party to render substantial services in Florida, including marketing and negotiating, the breach of that contract also confers jurisdiction under this provision. *Stomar, Inc. v. Lucky Seven Riverboat Co., L.L.C.*, 821 So.2d 1183 (Fla 4th DCA 2002).

■ There are no allegations supporting the existence of a contract between Kavlico and Mr. Hinkle for the purchase of the Aircraft. The record evidence regarding the contract between Kavlico and Cirrus establishes that the oil pressure transducer was manufactured in Tijuana, Mexico and delivered to Cirrus in Minnesota. *See* Urban Dec. at ¶ 11. Therefore, the Court cannot conclude that Kavlico breached a contract requiring performance in Florida.

As to the Cirrus contract to purchase the Aircraft, it required delivery in Minnesota. McIsaac Aff., Ex. 2. Under these circumstances, the alleged breach of contract occurred "at the point of delivery of the nonconforming goods." *Advanced Bodycare Solutions*, 514 F.Supp.2d at 1330. *See also Pier Point Developers, L.L.C. v. Whitelaw*, 912 So.2d 18, 19 (Fla. 4th DCA 2005) ("When the breach involves delivery of defective or nonconforming goods, venue [which is determined by where the cause of action accrued] is proper where the goods were delivered.")

Cirrus argues that based on Plaintiffs' allegations the alleged breach of contract occurred at the time of the delivery in Minnesota, and the alleged breach of implied warranties at the time of the crash in South Carolina when the engine stopped operating. At a minimum, the Court concludes that, on this record, there is nothing to demonstrate that the breach occurred in Florida. Plaintiffs' argument that the contract for sale of the Aircraft and ongoing warranty service were "made in Florida" is unavailing.

In comparison, Florida courts have found that when a defendant delivered thousands of allegedly defective products and intended those products to be delivered to plaintiff in Florida, it had specific personal jurisdiction under the long-arm statute. *See Advanced Bodycare Solutions*, 514 F.Supp.2d at 1330. *See also Stomar, Inc.*, 821 So.2d at 1185–86 (holding that where a non-resident defendant entered into a brokerage agreement with plaintiff for sale of a ship the defendant was subject to specific personal jurisdiction because the agreement required substantial services in Florida including marketing, negotiation and payment). The instant case is distinguishable.

Plaintiffs' allegations and competent evidence do not establish that either Kavlico or Cirrus "breached a contract in this state by failing to perform acts required by the contract to be performed in this state" to confer jurisdiction.

### 4. Causing injury to persons or property in Florida

■ The Florida long-arm statute also provides for the assertion of jurisdiction over an out-of-state defendant who causes injury to persons or property within the state. Fla. Stat. § 48.193(1)(a)(6). Plaintiffs have not alleged personal injury within the

state and therefore, they have not established that personal jurisdiction exists under Section 48.193(1)(a)(6).

The Court is unpersuaded by any arguments that the injuries "occurred in Florida" because the Hinkles reside here and have continued to suffer injury and get treatment in Florida. *See* Doc. 36 at 20–21; Doc. 74, at 12–13. This argument has been rejected by other courts. *See Price v. Point Marine, Inc.*, 610 So.2d 1339 (Fla 1st DCA 1992) (determining that the court lacked personal jurisdiction where the plaintiff died in Florida from injuries occurring while on a ship off the coast of Texas). *See also Hesterly v. Royal Caribbean Cruises, Ltd.*, 2008 WL 516495 (S.D. Fla. Feb. 25, 2008) (relying on *Price* and determining that it lacked personal jurisdiction over doctor defendants where injuries and initial medical treatment occurred outside of Florida).

Plaintiffs' reliance on *TracFone Wireless, Inc. v. Adams*, 98 F.Supp.3d 1243, 1254 (S.D. Fla. 2015) for the proposition that a defendant is properly subjected to the long–arm statute if the tort was committed while the defendant was "engaged in solicitation of service activities within this State" is misplaced. Plaintiffs miss the connection required between the activity within the state and the alleged cause of action. The activities cited by Plaintiffs are not in connection with the Aircraft involved in this case and Mr. Hinkle did not avail himself of that business activity. Plaintiffs' allegations and competent evidence do not establish that either Cirrus or Kavlico "caused injury to persons or property in Florida" to confer jurisdiction.

Based on the foregoing, the Court cannot exercise jurisdiction over Cirrus and Kavlico under Florida's specific personal jurisdiction for any of the long–arm statute's enumerated acts. *Accord Clay*, 61 F.Supp.3d at 1267–70.

### iv. General jurisdiction

Unlike specific jurisdiction, Florida's general jurisdiction does not require the performance or occurrence of any particular act. General jurisdiction under the Florida long-arm statute provides that "[a] defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity." Fla. Stat. § 48.193(2). Florida courts construe "substantial and not isolated activity" to mean "continuous and systematic business contact" with the state. *Caiazzo v. American Royal Arts Corp.*, 73 So.3d 245, 250 (Fla. 4th DCA 2011).

The Supreme Court clarified the standard for general jurisdiction in *Daimler* when it revisited the meaning of "continuous and systematic contact." 134 S.Ct. at 760–61. The Supreme Court reiterated that the quintessential contact that renders a defendant "at home" in the forum are formal incorporation in that state and locating its principal place of business there. *Id.* at 761. It is the "exceptional case" for a corporation to be "essentially at home" in a place other than its domicile. *Id.* at 761, n. 19. Therefore, a corporation is not subject to general jurisdiction in every state where it engages in "substantial, continuous, and systematic course of business." *Id.* at 760–61. The Eleventh Circuit echoed this sentiment in *Carmouche v. Tamborlee Mgt., Inc.*, stating that "only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there." 789 F.3d 1201, 1204 (11th Cir. 2015) (quoting *Daimler*, 134 S.Ct. at 760).

As to Cirrus, Plaintiffs argue that its activities are both intrastate and interstate and it engages in those activities for the

purpose of selling and supporting Cirrus aircraft. Because Cirrus has engaged in shipping hundreds of planes here, training pilots, providing ongoing warranties and marketing specifically in Florida, Plaintiffs argue that it is the type of substantial and not isolated activity that satisfies the requirement for general personal jurisdiction. Doc. 38 at 18.

As to Kavlico, Plaintiffs argue that it has submitted itself to general personal jurisdiction in Florida because its business and other activities are substantial and not isolated, both interstate and intrastate, and done for the purposes of selling and supporting Kavlico's products in Florida. According to Plaintiffs, this activity includes shipping its products here, registering to do business here, marketing its products through advertisements and selling its product through agents.

■ The Court finds that Cirrus and Kavlico's activity within Florida are not so substantial as to render them essentially at home. Neither entity is incorporated or has its principal place of business here. Although Cirrus and Kavlico have sales agents here and have registered to do business here, that alone is insufficient to confer jurisdiction. In *Carmouche*, the Eleventh Circuit held that a foreign defendant was not subject to general personal jurisdiction under *Daimler* when it had a Florida bank account, two Florida addresses, purchased insurance from Florida companies, filed financing statements with the Florida Secretary of State, joined a nonprofit trade organization in Florida, and consented to jurisdiction in the Southern District of Florida for cases arising out of agreements with a cruise line. 789 F.3d 1201, 1204. *See also Teva Pharm. Indus. v. Ruiz*, 181 So.3d 513, 521 (Fla. 2d DCA 2015) (where defendant was neither incorporated in nor had its principal place of business in Florida, plaintiff could not es-

tablish general jurisdiction under *Daimler*); *Burris v. Green*, 3:12CV521–MCR–CJK, 2016 WL 5844165, at *8 (N.D. Fla. Aug. 26, 2016), *report and recommendation adopted*, 3:12CV521–MCR–CJK, 2016 WL 5844481 (N.D. Fla. Sept. 30, 2016) (holding that although defendant had business interests in two Florida corporations, because he was not engaged in the day to day activities of those corporations, plaintiff did not establish general jurisdiction). Therefore, Plaintiffs have not established that Cirrus and Kavlico are subject to general jurisdiction under the Florida long-arm statute.

### v. Due Process

Because the Court concludes that Plaintiffs have not established through its allegations or competent evidence that Cirrus and Kavlico are subject to personal jurisdiction under Florida's long-arm statute, the Court need not reach the due process inquiry. *See Mazer*, 556 F.3d at 1275 n. 15.

### b. Request for discovery

■ Plaintiffs contend that they should be given the opportunity to discover facts that would support their jurisdictional allegations. Doc. 36 at 26; Doc. 74 at 26. They request that the Court deny the motions to dismiss until they have had the opportunity to conduct limited discovery. However, Plaintiffs did not move for leave to seek jurisdictional discovery, so the request for that particular relief is procedurally flawed. *Mazer*, 556 F.3d at 1280–81 (denying jurisdictional discovery where "plaintiff never formally moved the district court for jurisdictional discovery, but, instead, buried such requests in its briefs as a proposed alternative to dismissing defendant on the state of the current record."). And jurisdictional discovery is "not an unconditional right that permits a plaintiff to seek facts that would ultimately not support a showing [of] personal jurisdiction." *Ber-*

*nardele v. Bonorino,* 608 F.Supp.2d 1313, 1321 (S.D. Fla. 2009).

▉▉▉ Plaintiffs' reliance on *Eaton v. Dorchester Dev., Inc.,* 692 F.2d 727, 730 (11th Cir. 1982) for the proposition that jurisdictional discovery is a "qualified right" is misplaced in this context. Jurisdictional discovery is not warranted here, even if it had been properly requested, because Plaintiffs did not submit affidavits or any other competent evidence that rebutted Cirrus or Kavlico's affidavits. Therefore, there is no genuine dispute on a material jurisdictional fact to warrant jurisdictional discovery. *Accord Brown,* 202 F.Supp.3d at 1346 (citing *Peruyero v. Airbus S.A.S.,* 83 F.Supp.3d 1283, 1286–87 (S.D. Fla. 2014) (denying request for jurisdictional discovery "in the absence of a 'genuine dispute' on a material jurisdictional fact.").

## IV. CONCLUSION

Neither Cirrus nor Kavlico is incorporated or has its principal place of business in Florida. If the Defendants' Florida activities sufficed to allow adjudication of this South Carolina-based suit in Florida, presumably the same national reach would be available in every other state in which the Defendants had significant sales. *See Daimler,* 134 S.Ct. at 750. As the Supreme Court noted in *Daimler,* "[n]o decision of [the Supreme] Court sanctions a view of general jurisdiction so grasping." *Id.* The Court therefore has no reason to conclude that the Defendants were at home in Florida and subject to suit here on claims by the Plaintiffs having nothing to do with anything that occurred or had a significant impact in Florida.

Accordingly, it is **ORDERED**:

1. Defendants' Cirrus Design Corporation and Cirrus Industries, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 66, 27 (as to the Skinners)) is **GRANTED.**

2. Defendant Kavlico Corporation's Motion to Dismiss Plaintiffs' Complaint (Doc. 78, 38 (as to the Skinner Plaintiffs)) is **GRANTED.**

3. Defendants Cirrus Design Corporation, Cirrus Industries, Inc. and Kavlico Corporation are **DISMISSED** from this case. The Clerk is directed to terminate them from this action.

**DONE AND ORDERED** in Tampa, Florida on July 21, 2017.