[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-10404

_____

D.C. Docket No. 8:16-cv-02966-CEH-MAP

ROBERT HINKLE, et al.,

Plaintiffs - Appellants,

versus

CIRRUS DESIGN CORP., et al.,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(May 23, 2019)

Before ED CARNES, Chief Judge, MARTIN, and ROGERS,[*] Circuit Judges.

ROGERS, Circuit Judge:

---

[*] Honorable John M. Rogers, United States Circuit Judge for the Sixth Circuit, sitting by designation.

The district court dismissed this state-law product liability suit against Cirrus, an aircraft manufacturer, for lack of personal jurisdiction. Personal jurisdiction in a United States district court in Florida must meet the requirements for specific or general jurisdiction under Florida law. *See, e.g.*, *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000). Specific personal jurisdiction under the Florida long-arm statute requires that the asserted cause of action must "arise out of" one of a statutory list of defendant contacts with Florida, such as doing business in Florida. Fla. Stat. § 48.193(1)(a). Robert Hinkle's almost-new aircraft malfunctioned after he took off from a Florida airport, resulting in a crash landing in South Carolina, with injuries to him and his family. Although the Hinkles lived in Florida when Mr. Hinkle bought the aircraft and they took off from Florida, and although Cirrus has a sizeable presence in the state, the Hinkles' causes of action did not "arise out of" Cirrus's doing business in Florida, or out of any other action listed in Florida's long-arm statute. Nor was general personal jurisdiction in Florida warranted over Cirrus, a Wisconsin corporation with its principal place of business in Minnesota. The district court accordingly properly dismissed the suit.

In 2014, Hinkle took off from Sarasota in a Cirrus SR22T aircraft, headed for Orangeburg, South Carolina.[1] On board were his wife, his daughter, and her

---

[1] This recitation of the facts is taken from plaintiffs' complaint and the affidavits submitted by the parties below.

2

husband.  As the plane was flying near Hampton, South Carolina, the oil pressure dropped rapidly and the engine started to lose power.  Mr. Hinkle had to make an emergency landing at the nearest airport.  After another malfunction—an emergency parachute did not deploy properly—the aircraft crashed close to the end of the runway, causing injuries to all occupants.  An investigation concluded that the crash was caused by mechanical failures, including a bad engine installed by Cirrus.  The plane was close to new, with "just over 50 hours on it."

The Hinkles sued Cirrus[2] and others associated with the production of the airplane for strict liability, negligence, breach of contract, breach of express and implied warranties, and more.  Cirrus moved to dismiss the complaints for lack of personal jurisdiction.  In their papers, the Hinkles requested leave to engage in unspecified jurisdictional discovery, but never formally moved for jurisdictional discovery.

The district court granted Cirrus's motion.  *See Hinkle v. Continental Motors, Inc.*, 268 F. Supp. 3d 1312 (M.D. Fla. 2017).  The district court held that it could not exercise specific jurisdiction over Cirrus because Cirrus's conduct in Florida did not give rise to the Hinkles' causes of action, as required by the Florida long-arm statute.

---

[2] The Hinkles sued two related Cirrus entities:  Cirrus Design Corporation, d/b/a Cirrus Aircraft, and Cirrus Industries, Inc.  This opinion will refer to them together as "Cirrus."  The Hinkles' daughter and son-in-law, Dawn and John Michael Skinner, also filed a complaint against the same defendants.  These complaints are not materially different, and the plaintiffs' cases have been consolidated on appeal.  We refer to plaintiffs-appellants as "the Hinkles."

The court further held that Cirrus was not subject to general jurisdiction under the long-arm statute. Having determined that the long-arm statute was not satisfied, the court did not engage in a constitutional due process analysis. The court denied the Hinkles' request for jurisdictional discovery in part because they did not move for jurisdictional discovery (and only requested it in their opposition as an alternative to denying the motions to dismiss). The Hinkles now appeal the dismissal of their complaints for lack of personal jurisdiction and contend that they should have been given leave to conduct jurisdictional discovery.

Specific jurisdiction over the defendants is not authorized under the specific jurisdiction section of the Florida long-arm statute. Under that provision, a defendant is subject to jurisdiction in Florida for causes of action arising out of one or more of nine enumerated Florida-connected acts. *See* Fla. Stat. § 48.193(1). Only four of these actions are relied upon by plaintiffs: committing a tortious act in Florida, causing injury to persons in Florida from products manufactured by the defendant anywhere, breaching a contract by failing to perform acts required to be performed in Florida, and conducting business in Florida. *See* Fla. Stat. § 48.193(1), (2), (6), (7).[3]

---

[3] The district court cited some Florida cases that can be read to say categorically that the "place of injury" must be in Florida to show specific personal jurisdiction. 268 F. Supp. 3d at 1322–23 (citing *Clay v. AIG Aerospace Ins. Servs., Inc.*, 61 F. Supp. 3d 1255, 1267–70 (M.D. Fla. 2014); *Hollingsworth v. Iwerks Entm't, Inc.*, 947 F. Supp. 473, 478 (M.D. Fla. 1996)). Such a limited reading would appear to render superfluous many of the Florida contacts listed in the long-arm statute. We do not rely on such a limited reading.

The first, committing a tortious act in Florida, is plainly not applicable. The manufacture and sale of the allegedly defective aircraft took place outside of Florida. Cirrus designed, manufactured, assembled, and tested all SR22 aircraft—the type flown by Mr. Hinkle—in Minnesota. Aff. of Donald McIssac ¶12. Hinkle's own SR22 was manufactured in Minnesota, and the FAA certified it as airworthy in Minnesota. *Id.* ¶¶11-12. The Hinkles allege fraud and negligence and other torts related to the crash, but do not allege that Cirrus did anything fraudulent or otherwise tortious in Florida. Committing a non-tortious act that merely leads to a tortious act in Florida is not sufficient.

Second, the Hinkles' claims did not arise out of injuries caused in Florida. The Hinkles argued below that they suffered injury in Florida because they recovered from the crash there, but they appear to have abandoned that argument on appeal. In any event, as the district court noted, "[t]his argument has been rejected by other courts." 268 F. Supp. 3d at 1326 (citing *Price v. Point Marine, Inc.*, 610 So. 2d 1339[, 1342] (Fla. 1st DCA 1992); *Hesterly v. Royal Caribbean Cruises, Ltd.*, No. 06-22862-CIV, 2008 WL 516495 (S.D. Fla. Feb. 25, 2008).

Third, Cirrus did not breach a contract by failing to perform acts that were required to be performed in Florida. Cirrus did enter into a contract with Mr. Hinkle (or his LLC), and the Hinkles did bring a breach of contract claim. But the Hinkles point to no contract provision that Cirrus breached "by failing to perform acts

5

required by the contract to be performed in [Florida]," as required by the Florida long-arm statute. *See* Fla. Stat. § 48.193(1)(a)(7). The Hinkles do not allege that the sales contract required Cirrus to perform any actions in Florida, or that Cirrus breached the contract by failing to perform actions that were required to be performed in Florida.

When Mr. Hinkle purchased the aircraft, he bought a five-year "tail to spinner" warranty that would have covered the cost of most maintenance of the aircraft, including presumably maintenance at Cirrus's service stations in Florida. Mr. Hinkle however never got a chance to use the warranty, as the crash occurred in South Carolina just two months after he bought the aircraft. The "tail to spinner" warranty cannot be the contract that provides for specific personal jurisdiction in this case. Even if the tail to spinner warranty would have required Cirrus to perform actions in Florida, the Hinkles do not allege that Cirrus breached that contract at all, or that it did so by failing to perform some service in Florida.

The fourth prong relied upon by the Hinkles—performing business in Florida—is their strongest because they have alleged that Cirrus engaged in business in Florida. The problem is that the Hinkles' asserted causes of action did not arise out of that alleged business activity. Cirrus had registered with the Florida Secretary of State to do business in Florida. It had a registered agent and a sales representative in Florida. On its website, Cirrus listed a number of Florida locations where Cirrus

6

aircraft owners can receive training or maintenance. On at least one occasion, Cirrus executives travelled to Florida for an event aimed at selling Cirrus aircraft.

But although Mr. Hinkle lived in Florida when he purchased the aircraft, he did not purchase the aircraft through Cirrus's Florida sales representative; he went through a Virginia representative. Mr. Hinkle did not attend the Cirrus trade show in Florida. While Mr. Hinkle purchased the aircraft through his Florida LLC, and the sales contract lists the buyer as this LLC and provides a Florida address, the aircraft was delivered in Minnesota. None of this is sufficient to say that any of the Hinkle's causes of action arose out of Cirrus's business conduct in Florida.

At oral argument, the Hinkles' counsel argued that Cirrus's network in Florida was part of the overall "bargain" that led to the sale of the aircraft that led to the crash. Oral Arg. at 8:30. Even if it were true that Mr. Hinkle bought the aircraft because of Cirrus's activities in Florida (and if that were alleged in the Hinkles' complaint, and argued in their briefs), it would not mean that their causes of action "arose out of" this business activity. The Hinkles did not bring a cause of action for purchasing an aircraft. They brought claims of, for example, negligence, or breach of contract, but do not allege that Cirrus's business activity in Florida was related to

7

the alleged negligence that caused the crash or an alleged breach of the sales contract.[4]

The district court properly distinguished *Dodgen Industries, Inc. v. Cook*, 455 So. 2d 466 (Fla. 1st DCA 1984), a case relied upon by plaintiffs. Appellant's Br. at 30. In that breach of warranty case, the foreign defendant contacted the Florida-resident plaintiff directly (while he was in Florida), effected delivery of the machine in Florida, and sent repair parts to the plaintiff in Florida. A representative of the defendant company also visited the plaintiff in Florida "to resolve problems with the machine's performance." 455 So. 2d at 467. "Although the sale was made F.O.B. Iowa, [the defendant] effected delivery of the [machine] to [the plaintiff] in Florida" as well. *Id.* The court affirmed the lower court's exercise of specific jurisdiction over the defendant. The Hinkles focus on the fact that the sale was made "F.O.B. Iowa," and rely on *Dodgen* for the proposition that here, delivery of the airplane outside of Florida does not defeat jurisdiction. They miss the bigger picture: in *Dodgen*, the defendant's contact with the forum state gave rise to the plaintiff's cause of action. Although *Dodgen* is short on background, one can assume that the defendant's solicitation of the plaintiff, provision of repair parts, and visitation by

---

[4] At one point in their briefing, the Hinkles state that "The Hinkle and Skinner complaints each contain averments of negligent misrepresentations and fraud which Mr. Hinkle received in Florida." Appellant's Br. at 31. It is unclear what this statement refers to; the complaint does not appear to allege acts of negligent misrepresentation or fraud that the defendants directed to Hinkle in Florida.

the representative—all of which occurred in Florida—directly contributed to the plaintiff's buying and then being disappointed with the product at issue, which presumably was the gravamen of his breach of warranty claim. Here, the defendants' contact with the forum state and the plaintiffs' causes of action are unrelated. The Hinkles' causes of action did not arise from the defendants' activities in Florida.

To be sure, "[t]he term 'arising from' is broad; it does not mean 'proximately caused by,' but only requires a 'direct affiliation,' 'nexus,' or 'substantial connection' to exist between the basis for the cause of action and the business activity." *Citicorp Ins. Brokers (Marine), Ltd. v. Charman*, 635 So. 2d 79, 82 (Fla. Dist. Ct. App. 1994) (internal quotation marks omitted). The Hinkles' harm may have arisen from Cirrus activity outside of Florida that was like some of Cirrus's activities in Florida—Cirrus sells, promotes, and services its aircraft in Florida, and the Hinkles were allegedly harmed by a Cirrus aircraft—but that cannot be enough.

To hold that such a "relation" is sufficient for specific jurisdiction would effectively raise from the dead the "sliding scale" approach to specific jurisdiction rejected by the Supreme Court in *Bristol-Myers Squibb Co. v. Superior Court of California*, 137 S. Ct. 1773 (2017). In *Bristol-Myers*, the California Supreme Court had held that because of the defendant's "wide ranging" and "extensive" contacts with California, a "less direct connection between [the defendant's] forum activities and the plaintiffs' claims" was sufficient for an exercise of specific jurisdiction. *See*

9

137 S. Ct. at 1778-79.  The Supreme Court rejected this approach, noting that it "resembles a loose and spurious form of general jurisdiction."  *Id.* at 1781.  "For specific jurisdiction," the Court explained, "a defendant's general connections with the forum are not enough."  *Id.*  This is the fundamental problem with the Hinkles' arguments:  no matter how involved Cirrus may be in the state of Florida, because the Hinkles did not demonstrate a "direct affiliation, nexus, or substantial connection" between that involvement and their causes of action, specific jurisdiction is not proper.

Finally, the district court did not abuse its discretion in denying the Hinkle's request for jurisdictional discovery, given the incidental fashion in which the request was made.  The Hinkles requested jurisdictional discovery "as an alternative to the granting of the Defendants' motions to dismiss."  *See* Appellant's Br. at 26.  They did not move for jurisdictional discovery, and they did not explain in their filings in the district court, or in this court, what facts or even what type of facts they wish to discover if given the opportunity.  We have upheld a similar decision to deny "requests" for jurisdictional discovery when a party "buried such requests in its briefs," instead of presenting them in a motion.  *United Techs. Corp. v Mazer*, 556 F.3d 1260, 1280–81 (11th Cir. 2009).

The district court accordingly properly held that specific personal jurisdiction had not been shown under the Florida long-arm statute.  The Hinkles do

not argue on appeal for *general* personal jurisdiction over Cirrus, *see* Fla. Stat. § 48.193(2), other than to preserve such an argument should we remand for further discovery.  In any event, Cirrus is not incorporated in Florida, nor is its principal place of business in Florida, and no exceptional circumstances have been shown that would warrant a finding of general jurisdiction in Florida in this case.  *See generally*, *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014); *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1204 (11th Cir. 2015).

Where, as here, the requirements of the Florida long-arm statute have not been met, we need not address whether application of that statute in this case would meet federal constitutional due process requirements.  *See Mazer*, 556 F.3d at 1274 n. 15; *Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1319 (11th Cir. 2006).

The judgment of the district court is affirmed.