[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
April 21, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-12309

_____

D. C. Docket No. 06-81128-CV-DTKH

ADVANCED BODYCARE SOLUTIONS, LLC,

Plaintiff-Appellee,

versus

THIONE INTERNATIONAL, INC.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(April 21, 2008)**

Before BIRCH, PRYOR and KRAVITCH, Circuit Judges.

KRAVITCH, Circuit Judge:

In this interlocutory appeal we must decide whether the Federal Arbitration Act permits enforcement of a contract clause requiring an aggrieved party, prior to filing a lawsuit, to institute mediation or non-binding arbitration. We conclude it does not. Accordingly, we affirm the district court's order denying a stay pending arbitration.

## I.

Advanced Bodycare International and Thione International Inc. are parties to a licensing agreement. The contract grants Advanced Bodycare exclusive rights to market and distribute Thione's nutritional supplements and a related testing kit, which purports to monitor the amount of free radical cells in the body. Pursuant to the contract, Advanced Bodycare ordered and paid for, and Thione shipped, a certain quantity of supplements and testing kits, which were delivered in September and December, 2004. According to the complaint, Advanced Bodycare discovered that many of the testing kits were defective. It raised the issue with Thione, which, according to the complaint, eventually acknowledged a manufacturing defect and shipped some replacement units in October 2005, but not enough to replace all the defective kits. Thus, Advanced Bodycare alleges Thione is in breach of the contract.

The contract contains a provision specifying the procedures to be followed in the event of a dispute. It provides as follows:

> A. The parties recognize that disputes as to certain matters may from time to time arise which relate to either party's rights and/or obligations hereunder. It is the objective of the parties to establish procedures to facilitate the resolution of such disputes in an expedient manner by mutual cooperation and without resort to litigation. To accomplish that objective, the parties agree to follow the procedures set forth below if and when such a dispute arises between the parties.
>
> B. If any dispute arises between the parties relating to the interpretation, breach[,] or performance of this Agreement or the grounds for the termination thereof, and the parties cannot resolve the dispute within thirty (30) days of a written request by either party to the other party, the parties agree to hold a meeting, attended by the Chief Executive Officer or President of each party, to attempt in good faith to negotiate a resolution of the dispute prior to pursuing other available remedies. If within sixty (60) days after such written request, the parties have not succeeded in negotiating a resolution of the dispute, such dispute shall be submitted to non-binding arbitration or mediation with a mutually agreed upon, independent arbitrator or mediator. The arbitration or mediation shall be held in Atlanta, Georgia. Each party shall bear its own costs and legal fees associated with such arbitration or mediation. If no resolution acceptable to both parties is reached through arbitration or mediation, either party may resort to instituting legal action against the other in court and all rights and remedies of the party shall be preserved in such action. This Agreement shall be interpreted in accordance with the laws of the state of Georgia.

Advanced Bodycare filed this suit in Florida state court in December 2006, alleging breach of contract and related state-law claims based on the defective test kits. It did not first seek arbitration or mediation. The complaint was amended and

3

the case was then removed to the district court.[1]  After removal, Thione moved to stay the suit pending arbitration pursuant to § 3 of the Federal Arbitration Act, 9 U.S.C. § 3 (FAA).  The motion was denied in an order which is the subject of this appeal.

## II.

Advanced Bodycare argues we lack appellate jurisdiction.  It contends there is no appealable order, because the pertinent portion of the FAA's interlocutory appeal provision, 9 U.S.C. § 16(a)(1)(A), authorizes appeal only of "an order refusing a stay of any action under section 3 [of the FAA]," and a § 3 stay is available only where suit is brought upon an issue "referable to arbitration."  9 U.S.C. § 3.  Advanced Bodycare argues this suit is not "referable to arbitration" because mediation and non-binding arbitration are not enforceable under the FAA. In other words, Advanced Bodycare claims that no matter how Thione captioned its stay motion, that motion was not really pursuant to § 3 because the contract does not require "arbitration" within the meaning of the FAA.

This argument merely duplicates the merits, and we reject it.  That Thione might not be entitled to a § 3 stay on the merits hardly means it did not request one.

_____

[1] Removal was untimely.  However, this is not fatal to the district court's jurisdiction nor to ours, because untimeliness is a "procedural" defect in removal rather than a "jurisdictional" defect, In Re Uniroyal Goodrich Tire Co., 104 F.3d 322, 324 (11th Cir. 1997), and therefore cannot form the basis for a sua sponte remand.  Yusefzadeh v. Nelson Mullins Riley & Scarborough LLP, 365 F.3d 1244, 1245 (11th Cir. 2004).

4

It is undisputed that the parties entered an agreement which called for, inter alia, non-binding arbitration. Thus, Thione makes at least a colorable claim that there is an "agreement to arbitrate," 9 U.S.C. § 2, and hence that a § 3 stay is proper. A non-frivolous claim that the parties had an agreement to arbitrate, coupled with an order denying a stay, is sufficient to confer appellate jurisdiction. See Omni Tech Corp. v. MPC Solutions Sales LLC, 432 F.3d 797, 800 (7th Cir. 2005). This approach is also consistent with the treatment of jurisdictional allegations in a complaint. A complaint alleging a colorable federal cause of action confers district court jurisdiction even if the complaint is ultimately dismissed for failure to state a claim. See Steel Co. v. Citizens for a Better Env't., 523 U.S. 83, 89 (1998) (failure to state a federal claim does not defeat jurisdiction unless clearly frivolous or made only to allege federal jurisdiction). Because Thione made a non-frivolous motion for a stay pending arbitration and that motion was denied, we have jurisdiction.

**III.**

On the merits, we must decide if a contract under which disputes "shall be submitted to non-binding arbitration or mediation" is an agreement "to settle by arbitration a controversy," 9 U.S.C. § 2, thereby making the dispute "referable to arbitration," 9 U.S.C. § 3. If so, the district court erred in denying a stay, because

5

when a dispute is arbitrable, entry of a § 3 stay is mandatory. See Klay v. All Defendants, 389 F.3d 1191, 1204 (11th Cir. 2004).

This contract purports to require "mediation or non-binding arbitration."  It is apparent that an aggrieved party had the option to initiate whichever procedure it preferred, because the contract contains no conditions requiring that one or the other procedure be invoked in certain circumstances.  Although we could not locate any law on this point, we conclude that if either mediation or non-binding arbitration is not FAA "arbitration," this agreement is not enforceable under the FAA.  When an aggrieved party has an unconditional right to choose between two or more dispute resolution procedures, and one of them is not FAA arbitration, the contract is not one "to settle by arbitration a controversy."  9 U.S.C. § 2.  This is merely an application of the principle that arbitration is a creature of contract; a party may not be compelled to arbitrate if he did not agree to do so.  Klay, 389 F.3d at 1201.  When an aggrieved party may satisfy his contractual duties under a dispute resolution clause without undertaking arbitration, he has not obligated himself to settle the dispute by arbitration.  So if either procedure specified in this contract is not "arbitration" under the FAA, we must affirm the order on appeal.

We come now to the substantive question: is mediation arbitration?  When posed this way, the answer may seem obvious.  But the FAA does not define its

6

key term, "arbitration," and courts have had a difficult time defining just what types of procedures are enforceable under the statute. Because doubts about arbitrability are resolved in favor of arbitration, see Klay, 389 F.3d at 1201, and because a few district courts have decided on that basis that mediation contracts are enforceable under the FAA,[2] the issue merits close scrutiny.

This circuit has not enunciated a test for resolving whether a particular dispute resolution procedure is FAA "arbitration." One widely-followed opinion asks whether the parties have agreed to submit a dispute to a third party for a decision. AMF Inc. v. Brunswick Corp., 621 F. Supp. 456, 460 (E.D.N.Y. 1985) (Weinstein, J.). Other authority considers how closely the procedure chosen resembles "classic arbitration" and whether enforcing it serves the intuited purposes of Congress. Fit Tech v. Bally Total Fitness, 374 F.3d 1, 6-7 (1st Cir. 2004); Salt Lake Tribune Publ'g Co. v. Mgmt. Planning Inc., 390 F.3d 684, 689-90 (10th Cir. 2004). These differing verbal formulations do not constitute a real disagreement, because submitting a dispute to a third party for a binding decision is quintessential "classic arbitration." See Salt Lake Tribune, 390 F.3d at 689 ("classic arbitration" is characterized by "empower[ing] a third party to render a decision settling [the] dispute"). Thus, when there is a dispute about whether any

---

[2] See Fisher v. GE Med. Sys., 276 F. Supp. 2d 891 (M.D. Tenn. 2003); Richard Ellis Inc. v. Am. Env. Waste Mgmt., 1998 WL 903495 (E.D.N.Y. Dec. 4, 1998).

particular dispute resolution method chosen in a contract is FAA arbitration, we will look for the "common incidents" of "classic arbitration," including (i) an independent adjudicator, (ii) who applies substantive legal standards (*i.e.* the parties' agreement and background contract law), (iii) considers evidence and argument (however formally or informally) from each party, and (iv) renders a decision that purports to resolve the rights and duties of the parties, typically by awarding damages or equitable relief. See Fit Tech, 374 F.3d at 7. The presence or absence of any one of these circumstances will not always be determinative, and parties have great flexibility under the FAA to select pre-packaged dispute resolution procedures, or to craft their own.

Although we acknowledge that there are few clear rules in delineating the bounds of FAA arbitration, we believe there is one that controls this case. The FAA clearly presumes that arbitration will result in an "award" declaring the rights and duties of the parties. Indeed, much of arbitration law is predicated on the existence of an award: the FAA provides that an award may be confirmed and judgment entered upon it if the parties have so agreed, 9 U.S.C. § 9, or if challenged it may be modified or vacated by the court on grounds established by law. See 9 U.S.C. § 10 (statutory grounds for vacatur); 9 U.S.C. § 11 (statutory grounds for modification); BL Harbert Int'l LLC v. Hercules Steel Co., 441 F.3d

8

905, 910 (11th Cir. 2006) (judicially-created grounds for vacatur). If a dispute resolution procedure does not produce some type of award that can be meaningfully confirmed, modified, or vacated by a court upon proper motion, it is not arbitration within the scope of the FAA.[3]

This bright line rule makes sense not only in light of the FAA's statutory structure but its statutory purposes as well. The purpose of the FAA is to "relieve congestion in the courts and to provide parties with an alternative method of dispute resolution that is speedier and less costly than litigation." AIG Baker Sterling Heights LLC v. Am. Multi-Cinema Inc., 508 F.3d 995, 1001 (11th Cir. 2007). But "[t]he laudatory goals of the FAA will be achieved only to the extent that courts ensure arbitration is an alternative to litigation, not an additional layer in a protracted contest." BL Harbert Int'l, 441 F.3d at 907. When, as here, a party has contractually preserved all its rights and remedies in court and is unwilling to undertake mediation voluntarily, the FAA's goal of minimizing the time and cost of litigation is ill-served by a prefatory round of motions practice. Unlike submitting a dispute to a private adjudicator, which the FAA contemplates, compelling a party to submit to settlement talks it does not wish to enter and which

---

[3] The inverse is not true, however. The presence of an award does not by itself make a procedure "arbitration" if the procedures that produce the award bear no resemblance to classic arbitration. The parties could not contract for a binding coin flip, with the winner to receive an award of his choice, and expect the agreement to be enforced under the FAA.

cannot resolve the dispute of their own force may well *increase* the time and treasure spent in litigation.

These principles lead clearly to the conclusion that mediation is not within the FAA's scope. Indeed, as a leading dispute resolution scholar explained, "the law of arbitration is in nearly every respect an illogical foundation for enforcement of mediation agreements." Thomas Stipanowich, The Arbitration Penumbra: Arbitration Law and the Rapidly Changing Landscape of Dispute Resolution, 8 Nev. L. J. 427, 446 (2007). Mediation, as that term is commonly understood,[4] is a "method of nonbinding dispute resolution involving a neutral third party who tries to help the disputing parties reach a mutually agreeable solution," Black's Law Dictionary 996 (7th ed. 1999), or "a process in which a mediator facilitates communication and negotiation between parties to assist them in reaching a voluntary agreement regarding their dispute." Unif. Mediation Act § 2(1). Simply stated, mediation does not resolve a dispute, it merely helps the parties do so. In contrast, the FAA presumes that the arbitration process itself will produce a

---

[4] Because the contract did not specify any particular arbitration or mediation protocols, our discussion of these procedures is necessarily stylized. Normally labels do not control; indeed, if an agreement specifies in detail a dispute resolution procedure which it calls "mediation" (or anything else) but which is, in substance, FAA "arbitration," substance controls over title. But here, where the agreement provides for "mediation" but provides no further description of the procedures to be employed, our analysis must focus on a typical mediation, because we presume, in the absence of contrary evidence, that the parties used the term in its ordinary sense. See St. Charles Foods, Inc. v. America's Favorite Chicken Co., 198 F.3d 815, 819 n.3 (11th Cir. 1999) (summarizing Georgia law of contract interpretation).

10

resolution independent of the parties' acquiescence – an award which declares the parties' rights and which may be confirmed with the force of a judgment. That a typical mediation produces no award is highly probative evidence that an agreement to mediate a dispute is not "an agreement to settle by arbitration a controversy." 9 U.S.C. § 2. Parties to a mediation contract have not "agreed to submit a dispute for decision by a third party," AMF, Inc., 621 F. Supp. at 460, because the third party makes no decision.

In short, because the mediation process does not purport to adjudicate or resolve a case in any way, it is not "arbitration" within the meaning of the FAA. Accordingly, FAA remedies, including mandatory stays and motions to compel, are not appropriately invoked to compel mediation. Further, a dispute resolution clause that may be satisfied by arbitration *or* mediation, at the aggrieved party's option, is not "an agreement to settle by arbitration a controversy" and thus is not enforceable under the FAA either. Because we decide the case on this basis, we reserve for another day whether *non-binding* arbitration is within the scope of the FAA.

We emphasize the limited nature of our ruling. This opinion should not be read as denigrating mediation – quite the contrary. We encourage parties to make liberal use of it, and we encourage district courts to liberally employ any authority

11

they have under local rules to order mediation sua sponte when doing so may expedite the resolution of a case. Nor do we hold that agreements to mediate are per se unenforceable. They might be specifically enforceable in contract or under other law; that issue is not before us. Finally, we emphasize that we do not hold that stays in aid of mediation are per se impermissible. To the contrary, district courts have inherent, discretionary authority to issue stays in many circumstances,[5] and granting a stay to permit mediation (or to require it) will often be appropriate. We merely hold that the mandatory remedies of the FAA may not be invoked to compel mediation.

**AFFIRMED.**

---

[5] See Ortega Trujillo v. Conover & Co. Comms. Inc., 221 F.3d 1262, 1264 (11th Cir. 2000) (citations omitted).