OSCN Found Document:Greenfield v Circustrix, LLC et al

 

 
 

 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 Greenfield v Circustrix, LLC et al
2025 OK CIV APP 19
Case Number: 122122
Decided: 04/30/2025
Mandate Issued: 05/29/2025
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION IV
Cite as: 2025 OK CIV APP 19, __ P.3d __

 

KAREN SUE GREENFIELD, as guardian and next of kin for J.M.G., a minor, Plaintiff/Appellee,
vs.
CIRCUSTRIX, LLC, a foreign limited liability company, CIRCUSTRIX HOLDINGS, LLC, a foreign limited liability company, and OKC DENY GRAVITY, LLC, a domestic limited liability company, d/b/a SKY ZONE INDOOR TRAMPOLINE PARK, Defendants/Appellants,
and
JOHN DOE(S) MANUFACTURER AND/OR RETAILER OF THE EQUIPMENT PLAINTIFF WAS USING WHEN INJURED, Defendants.

APPEAL FROM THE DISTRICT COURT OF
OKLAHOMA COUNTY, OKLAHOMA

HONORABLE NATALIE MAI, TRIAL JUDGE

AFFIRMED

Dorothy E. Heim HEIM LAW FIRM Edmond, Oklahoma and Ashley S. Manning MANNING LAW FIRM Edmond, Oklahoma For Plaintiff/Appellee

Cary E. Hiltgen, Jeff C. Grotta, Harrison J. DuPont, HILTGEN & BREWER, P.C. Oklahoma City, Oklahoma For Defendants/Appellants

DEBORAH B. BARNES, PRESIDING JUDGE:

¶1 This action arises from events at an indoor trampoline park. Defendants/Appellants CircusTrix, LLC, CircusTrix Holdings, LLC, and OKC Deny Gravity, LLC, d/b/a Sky Zone Indoor Trampoline Park, seek review of the district court's order denying their motion to compel arbitration. 

BACKGROUND

¶2 As summarized by Appellee Karen Sue Greenfield, as guardian and next of kin for J.M.G., in her amended petition:

This is a negligence/premises liability case resulting from the negligent and reckless conduct and choices committed by [Appellants], both individually and jointly, and to be discovered product manufacturers/retailers/servicers. The conduct resulted in an injury to J.M.G. which occurred at a "Sky Zone" facility located in Edmond, Oklahoma on July 10, 2022.

¶3 In May 2023, Appellants filed a motion to compel arbitration. 12 O.S. §§ 185612 O.S. § 1857

If a dispute arises out of or relates to this AGREEMENT and/or OKC DENY GRAVITY, LLC and/or EQUIPMENT SUPPLIERS and/or any ACTIVITIES and/or an incident that occurs while on the PREMISES, and/or while using any items purchased in or about the PREMISES, as well as the installation, design, construction, and condition of the PREMISES by OKC DENY GRAVITY, LLC and/or EQUIPMENT SUPPLIERS, involving a single claimant, or claimants who are related or asserting claims arising from a single incident and if the dispute cannot be settled through direct negotiations, and unless the parties agree on a different mediation or non-binding arbitration process, the parties agree first to try in good faith to settle the dispute by mediation administered by the American Arbitration Association (the "AAA") under its Commercial Mediation Procedures . . . before resorting to non-binding arbitration. 

¶4 In Appellee's response, she asserted, among other things, that she "is not bound by any release or arbitration agreement which [J.M.G.] never signed, and[] which he could disaffirm[] even if he had signed it. Under Oklahoma law, any signature by his parent or guardian is of no consequence, as such is simply not legally binding upon J.M.G."

¶5 After an evidentiary hearing, the district court's order denying Appellants' motion to compel arbitration was filed on May 22, 2024. The court noted that "[t]he minor never signed the [Participation Agreement]," and further stated that "[t]he Guardianship Statutes, Title 33-118 providing the Duties and Powers of Guardian or Limited Guardian, do not specifically address the issue of the guardian's authority to waive the minor child's right to a jury trial."

¶6 It is from this order that Appellants appeal.

STANDARD OF REVIEW

¶7 "The question as to the existence of valid enforceable agreements to arbitrate . . . is a question of law to be reviewed by a de novo standard, without deference to the lower court." Okla. Oncology & Hematology P.C. v. US Oncology, Inc., 2007 OK 12160 P.3d 936Berry & Berry Acquisitions, LLC v. BFN Props. LLC, 2018 OK 27416 P.3d 1061

ANALYSIS

¶8 As above quoted, the Participation Agreement states that "any unresolved claim shall be submitted to non-binding arbitration administered by the AAA in accordance with its Non-Binding Consumer Arbitration Rules . . . ." A copy of AAA's "Non-Binding Consumer Arbitration Rules" is available on the website referenced in the Participation Agreement. 

The [AAA's] Non-Binding Consumer Arbitration Rules ("Rules") provides consumers and businesses with procedures for arbitrations resulting in awards that are advisory and non-binding in nature. This process can provide the parties with an assessment of their case and the resulting award may aid the parties at arriving at a settlement of their dispute. These Rules were drafted and designed to be consistent with the minimum due process principles of the Consumer Due Process Protocol.

The Non-Binding Consumer Arbitration Rules further state: "The AAA has developed the Non-Binding Consumer Arbitration Rules for consumers and businesses that want to have an advisory, non-binding decision on their disputes."

¶9 The dispositive issue on appeal is whether the nonbinding arbitration process described in the parties' agreement constitutes mandatory arbitration subject to the OUAA. See Nicholson v. Stitt, 2022 OK 35508 P.3d 442

¶10 Arbitration is "[a] dispute-resolution process in which the disputing parties choose one or more neutral third parties to make a final and binding decision resolving the dispute." Black's Law Dictionary (12th ed. 2024). Thus, "[t]he term 'binding arbitration' is redundantCity of Lenexa v. C.L. Fairley Const. Co., 777 P.2d 851, 852 (Kan. 1989) (Syllabus by the Court).

¶11 As explained by the Oklahoma Supreme Court:

The fundamental purpose of arbitration is to preclude court intervention into the merits of disputes when arbitration has been provided for contractually. The basis for the institution of an arbitration proceeding may be either an agreement which provides for arbitration of future controversies or for submission of existing controversies. An agreement for the submission of an issue to arbitrators is a prerequisite to the commencement of a valid arbitration agreement. Where arbitration has been contracted for it constitutes a substantive and mandatory right. There cannot be a valid arbitration or award without a binding submission to arbitration or an impartial arbitrator.

Voss v. City of Okla. City, 1980 OK 148618 P.2d 925Voss Court further explained:

Arbitration is the referral of a dispute by the voluntary agreement of the parties to one or more impartial arbitrators for a final and binding decision as a determination of their dispute. An arbitration award is made on the basis of evidence and argument presented by the parties who agree in advance to accept the decision of the arbitrator as final and binding.

Id. ¶ 4, 618 P.2d at 927 (emphasis added). See also Howell's Well Serv., Inc. v. Focus Grp. Advisors, LLC, 2021 OK 25507 P.3d 623arbitration agreements are designed to preclude court intervention into the merits of disputes when arbitration has been provided for contractually . . . ." (emphasis added)); B.A.P., L.L.P. v. Pearman, 2011 OK CIV APP 30250 P.3d 332Voss)).

¶12 Nonbinding arbitration, on the other hand, allows either party to reject the result of that process and turn to the courts as if no arbitration had occurred. Such a process -- while resembling arbitration in certain particulars -- is nevertheless inconsistent with the OUAA. Section 1855 of the OUAA provides, in part, as follows:

B. Before a controversy arises that is subject to an agreement to arbitrate, a party to the agreement may not:

1. Waive or agree to vary the effect of the requirements of subsection A of Section 1856, subsection A of Section 1857, Section 1859, subsection A or B of Section 1868, Section 1877 or Section 1879 of this title;

2. Agree to unreasonably restrict the right under Section 1860 of this title to notice of the initiation of an arbitration proceeding;

3. Agree to unreasonably restrict the right under Section 1863 of this title to disclosure of any facts by a neutral arbitrator; or

4. Waive the right under Section 1867 of this title of a party to an agreement to arbitrate to be represented by a lawyer at any proceeding or hearing under the Uniform Arbitration Act, but an employer and a labor organization may waive the right to representation by a lawyer in a labor arbitration.

C. A party to an agreement to arbitrate or to an arbitration proceeding may not waive, or the parties may not vary the effect of, the requirements of this section or subsection A or C of Section 1854, Section 1858, Section 1865, Section 1869, subsection D or E of Section 1871, Section 1873, 1874 or 1875, subsection A or B of Section 1876, or Section 1880 of this title.

¶13 Thus, among the provisions that cannot be waived under the OUAA are § 1877(B), which grants the district court the power to enter judgment on an arbitration award, and § 1879, which allows an appeal from an order confirming or denying confirmation of an arbitration award to proceed as from an order or a judgment in a civil action. More to the point, § 1873 cannot be waived. It provides: "After a party to an arbitration proceeding receives notice of an award, the party may make an application and motion to the court for an order confirming the award at which time the court shall issue a confirming order unless the award is modified or corrected pursuant to Section 21 or 25 of this act or is vacated pursuant to Section 24 of this act." Thus, the OUAA plainly contemplates that, to be subject to its provisions, the arbitration must consist of a process culminating in a final and binding award that shall be confirmed by the district court (unless modified, corrected, or vacated). As set forth in § 1876, which also cannot be waived or varied:

A. Upon granting an order confirming, vacating without directing a rehearing, modifying, or correcting an award, the court shall enter a judgment in conformity therewith. The judgment may be recorded, docketed, and enforced as any other judgment in a civil action.

B. A court may allow reasonable costs of the motion and subsequent judicial proceedings.

C. On application of a prevailing party to a contested judicial proceeding under Section 23, 24, or 25, the court may add reasonable attorney fees and other reasonable expenses of litigation incurred in a judicial proceeding after the award is made to a judgment confirming, vacating without directing a rehearing, modifying, or correcting an award.

¶14 Thus, the Oklahoma Supreme Court has stated: "We are mindful that the arbitration statutes, like arbitration agreements, are viewed as a shortcut to substantial justice with minimum court interference, and that a fundamental purpose of arbitration is to preclude court intervention into the merits of disputes which the parties have agreed to submit to arbitration." Sooner Builders & Invs., Inc. v. Nolan Hatcher Const. Servs., L.L.C., 2007 OK 50164 P.3d 1063

¶15 The following discussion is instructive:

We give "nonbinding" its ordinary meaning: not binding. The references to the proceeding as nonbinding signaled that the parties expressly intended not to have a binding arbitration. . . . The use of nonbinding to modify arbitration was not inadvertent. We conclude the plain language of the agreement indicates the parties were not agreeing to a binding determination . . . , and therefore were not agreeing to arbitration.

Rimov v. Schultz, 253 P.3d 462, 466-67 (Wash. Ct. App. 2011). That court continued:

Although, public policy strongly favors arbitration as a remedy for settling disputes, arbitration should not be invoked to resolve disputes that the parties have not agreed to arbitrate. The parties cannot be compelled to arbitrate unless they have agreed to do so. The presumptions referenced above do not overcome the plain meaning of the contract that a nonbinding procedure was chosen. No agreement to arbitrate was made.

Id. at 468 (internal quotation marks omitted) (citations omitted). That court further stated:

[O]nce parties have agreed to arbitrate an issue, they may not contract around provisions of the arbitration statute. This is consistent with the WUAA [i.e., Washington Uniform Arbitration Act]. RCW 7.04A.220 and RCW 7.04A.230 (sections 22 and 23 of the revised Uniform Arbitration Act (UAA) (2000), 7 pt. 1A U.L.A. 76-78 (2009)) provide for the scope of judicial review. These provisions do not allow for de novo review [i.e., of the arbitration award in the district court]. RCW 7.04A.040(3) (section 4(c) of the UAA, 7 pt. 1A U.L.A. 19) prohibits waiver of these provisions.

Rimov, 253 P.3d at 469. 

¶16 Similarly, the OUAA does not contain provisions consistent with a nonbinding dispute resolution process or provide for de novo proceedings in the district following arbitration. Rather, its provisions apply to what the Oklahoma Supreme Court has described as "a binding submission to . . . an impartial arbitrator." Voss, ¶ 5, 618 P.2d at 927-28.

¶17 As above stated, we are confronted with the question of whether the "non-binding arbitration" process set forth in the Participation Agreement should be compelled as mandatory arbitration pursuant to the OUAA. 

CONCLUSION

¶18 We affirm the district court's order denying Appellants' motion to compel arbitration.

¶19 AFFIRMED.

HIXON, V.C.J., and HUBER, J., concur.

FOOTNOTES

See also Magel v. Nuveen, 2023 OK CIV APP 13529 P.3d 928

Bruner v. Timberlane Manor Ltd. P'ship, 2006 OK 90155 P.3d 16id. ¶ 43, 155 P.3d at 31. We further address the FAA below. See infra note 7. Regardless,

"[a]n arbitration agreement's existence is governed by state law principles." Williams [v. TAMKO Bldg. Prods., Inc.], 2019 OK 61See also id. (Arbitration agreements are "as enforceable as other contracts, but not more so." (quoting Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 404 n.12 . . . (1967)); 12 O.S. 2021 § 1857(A) ("An agreement . . . to submit to arbitration . . . is valid, enforceable, and irrevocable except upon a ground that exists at law or in equity for the revocation of a contract."). That is, "[i]n determining whether a valid agreement to arbitrate exists, the district court should apply ordinary state-law principles that govern the formation of contracts." Magel v. Nuveen, 2023 OK CIV APP 13

Watts v. Belmar N. HOA, 2023 OK CIV APP 22531 P.3d 669

binding arbitration." By contrast,

Mediation, as that term is commonly understood, is a "method of nonbinding dispute resolution involving a neutral third party who tries to help the disputing parties reach a mutually agreeable solution," Black's Law Dictionary 996 (7th ed. 1999), or "a process in which a mediator facilitates communication and negotiation between parties to assist them in reaching a voluntary agreement regarding their dispute." Unif. Mediation Act § 2(1). Simply stated, mediation does not resolve a dispute, it merely helps the parties do so. In contrast, the FAA presumes that the arbitration process itself will produce a resolution independent of the parties' acquiescence -- an award which declares the parties' rights and which may be confirmed with the force of a judgment.

Advanced Bodycare Sols., LLC v. Thione Int'l, Inc., 524 F.3d 1235, 1240 (11th Cir. 2008). That court stated that

common incidents of classic arbitration[] includ[e] (i) an independent adjudicator, (ii) who applies substantive legal standards (i.e. the parties' agreement and background contract law), (iii) considers evidence and argument (however formally or informally) from each party, and (iv) renders a decision that purports to resolve the rights and duties of the parties, typically by awarding damages or equitable relief.

Id. at 1239 (internal quotation marks omitted). However,

[t]he presence or absence of any one of those circumstances will not always be determinative, but "[i]f a dispute resolution procedure does not produce some type of award that can be meaningfully confirmed, modified, or vacated by a court upon proper motion, it is not arbitration within the scope of the FAA."

Campbell's Foliage, Inc. v. Fed. Crop Ins. Corp., 562 F. App'x 828, 830 (11th Cir. 2014) (quoting Advanced Bodycare).

See, e.g., Wolsey, Ltd. v. Foodmaker, Inc., 144 F.3d 1205, 1209 (9th Cir. 1998) ("[W]e hold that arbitration need not be binding in order to fall within the scope of the Federal Arbitration Act."). However, "[w]hether an agreement to enter into a non-binding arbitration process is enforceable under the FAA is a matter not well-settled in the federal courts . . . ." United States v. Bankers Ins. Co., 245 F.3d 315, 322 (4th Cir. 2001). Therefore, even were we to assume that the FAA applies to this case, see supra note 5, we need not follow the holding in Wolsey. The Wolsey Court emphasized the following factors: that the arbitrator would be a third party; that recourse to the courts could not occur until after the arbitrator made its decision; and that there is a strong presumption in favor of arbitrability. Wolsey, 144 F.3d at 1209. However, the first two factors could equally apply to mediation, and as explained by the Rimov Court, the presumption in favor of arbitrability is insufficient by itself to answer the question presented. Regardless, an important consideration shared by some federal courts on both sides of the issue is whether the nonbinding process would be futile. See, e.g., Bankers Ins. Co., 245 F.3d at 322 ("Some courts have chosen to focus on whether the arbitration process is likely to resolve the issues . . . ."). Here, under the specific circumstances presented -- e.g., the advisory nature of the nonbinding process described in the AAA Rules, and the nature of the parties' disagreement as to various legal questions -- the nonbinding process is not "likely to resolve the issues."

 
 
 
 
 
 
 
 
 
 The Oklahoma Supreme Court
 2100 N. Lincoln Blvd., Suite 1
 Oklahoma City, OK 73105